IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMANTHA DEVERY<br>1759 Everly Way<br>Quakertown, PA 18951 | :<br>:<br>:<br>: | CIVIL ACTION NO. _____ |
| Plaintiff, | :<br>: | |
| v. | :<br>: | **JURY TRIAL DEMANDED** |
| BUCKINGHAM TOWNSHIP<br>4613 Hughesian Drive<br>Buckingham, PA 18912 | :<br>:<br>:<br>:<br>: | |
| Defendant. | : | |

## **COMPLAINT – CIVIL ACTION**

Plaintiff Samantha Devery ("Plaintiff"), by and through her undersigned attorneys, for her Complaint against Defendant Buckingham Township ("Defendant"), alleges as follows:

## **NATURE OF THE ACTION**

1. Plaintiff brings this Complaint contending that Defendant failed to provide her reasonable space to express breast milk pursuant to the requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, *et seq.*, as amended by the Patient Protection and Affordable Care Act ("PPACA"), 42 U.S.C § 18001, *et seq.* Specifically, Plaintiff alleges that Defendant denied her reasonable space to express breast milk, to which she was lawfully entitled, resulting a hostile work environment and her constructive discharge from employment, in violation of the FLSA.

2. Plaintiff additionally brings this action contending that Defendant violated Plaintiff's rights protected by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k),

*et seq.* Specifically, Plaintiff contends that Defendant subjected her to discrimination and a hostile work environment because of her sex and pregnancy, ultimately resulting in her constructive discharge from employment, in violation of Title VII, and the PDA.[1]

3. Plaintiff further brings this action contending that Defendant violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, by interfering with Plaintiff's FMLA leave and retaliating against Plaintiff for taking such leave.

4. Plaintiff seeks monetary damages and penalties as recourse for Defendant's willful, unlawful, and improper conduct.

## PARTIES

5. Plaintiff, Samantha Devery, is a citizen of the United States and Pennsylvania, who currently maintains a residence at 1759 Everly Way, Quakertown, PA 18951.

6. Upon information and belief, Defendant Buckingham Township is organized and existing under the laws of the Commonwealth of Pennsylvania with a principal business address located at 4613 Hughesian Drive, Buckingham, PA 18912.

7. Defendant is a public employer covered by the FLSA. *See* 29 U.S.C. § 216(e)(2)(C). *See also* 29 USCS § 2611(4)(A)(iii).

8. Plaintiff was employed by Defendant during all relevant times hereto and, as such, is an employee entitled to the protections of the FLSA, FMLA, and Title VII.

9. At all times relevant hereto, Defendant acted or failed to act through its agents, servants and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

---

[1] Plaintiff intends to amend this Complaint to add claims under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, upon administrative exhaustion.

## JURISDICTION AND VENUE

10. Paragraphs 1 through 9 are hereby incorporated by reference as though the same were fully set forth at length herein.

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 29 U.S.C. § 216(b), 29 U.S.C. § 2617(a), and 42 U.S.C. § 2000e-5(f)(3).

12. On or about January 16, 2023, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e). Plaintiff's EEOC charge was docketed as EEOC Charge No. 530-2023-02655. Plaintiff's EEOC Charge was filed within one-hundred and eighty (180) days of the unlawful employment practice.

13. On June 7, 2023, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

14. Plaintiff filed the instant action within the statutory time frame.

15. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

16. The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the parties reside in this judicial district and Defendant's unlawful conduct giving rise to Plaintiff's claims occurred herein.

## FACTS

17. Paragraphs 1 through 16 are hereby incorporated by reference as though the same were fully set forth at length herein.

18. Plaintiff began her employment with Defendant on or about October 15, 2018, in the position of Police Officer.

19. In or around January 2022, Defendant promoted Plaintiff to the position of Detective.

20. At all times material hereto, Plaintiff performed her job well, receiving occasional praise, positive reviews of her performance, and no justifiable discipline.

21. Notably, Plaintiff was the first female Police Officer and first female Detective in Defendant's Police Department.

22. By way of background, in or around 2020, Plaintiff became pregnant with her daughter, who was born in April 2021.

23. Plaintiff went on maternity leave and returned to work on or about July 19, 2021.

24. Egregiously, following Plaintiff's return to work, Defendant failed to provide Plaintiff with an appropriate, private space for her to pump breast milk for her nursing child.

25. Indeed, from approximately July 2021 through the end of her employment with Defendant, Plaintiff pumped at least two (2) times per shift without privacy in unsanitary and inadequate facilities.

26. On her first day back from maternity leave, Plaintiff's Supervisor, Corporal (now Sergeant) Rick Hazelett ("Cpl. Hazelett"), told Plaintiff she had to pump in the bathroom.

27. Accordingly, from approximately July 2021 through January 2022, Plaintiff was forced to pump in the bathroom, which others frequented, often resulting in the contamination of her daughter's food.

28. When Plaintiff was promoted to Detective in or around January 2022, Defendant instructed her to pump in the Detectives' Office, which she shared with another detective, James Crusemire ("Det. Crusemire").

29. Det. Crusemire was almost always present while Plaintiff pumped in the Detectives' Office and declined to leave while she pumped.

30. Though Plaintiff turned her back to Det. Crusemire while pumping, he admitted to her that he could see her pumping in the reflection of a television screen that she was turned towards.

31. Additionally, on at least one occasion, Lieutenant William Moffet ("Lt. Moffet") entered the Detectives' Office while Plaintiff was pumping and instead of leaving, remained there to speak with her and Det. Crusemire.

32. On another occasion, Lt. Moffet forced Officer Matthew Ofner ("Officer Ofner") to take an online training in the Detectives' Office, despite Officer Ofner requesting multiple times to take it elsewhere to allow Plaintiff to pump in private.

33. Further, on or about March 3 and 4, 2022, Chief Michael Gallagher ("Chief Gallagher") allowed accreditation assessors to work out of the Detectives' Office, forcing Plaintiff to pump inside of her vehicle where she had zero privacy.

34. Defendant's officers and supervisors were overtly hostile towards Plaintiff pumping at work.

35. For example, on or about January 17, 2022, after entering the office while Plaintiff was pumping, Lt. Moffet told Plaintiff, "Your pumping is inappropriate, especially in the Detectives' Office. Pump in the bathroom."

36. Plaintiff learned later from Judge Maggie Snow ("Judge Snow") that Lt. Moffet had attempted to fire Plaintiff due to her pumping at work.

37. Additionally, Officer Chris Forbes ("Officer Forbes") frequently complained to other officers about Plaintiff pumping.

38. On or about March 1, 2022, when Plaintiff asked Officer Forbes about this, he admitted to making the complaints and told Plaintiff she was pumping too much and excessively.

5

39. Officer Forbes also told Plaintiff, "You've had a real shitty attitude probably since your wedding and since you've come back from having a baby, you've been a real bitch."

40. Officer Forbes called Plaintiff a "bitch" multiple times during this conversation.

41. Plaintiff complained to Chief Gallagher multiple times about the workplace discrimination she faced after her return from maternity leave.

42. However, Chief Gallagher took insufficient action to address Plaintiff's complaints.

43. In fact, Chief Gallagher himself engaged in a pattern of bias against Plaintiff because of her sex, pregnancy, and maternal status.

44. For example, on or about February 22, 2021, while discussing Plaintiff's upcoming maternity leave, Chief Gallagher told Plaintiff, "I am never hiring another female again, I don't want to deal with pregnancies."

45. Then, on or about April 14, 2021, when Plaintiff advised Chief Gallagher that she was having contractions and her baby would be born soon, Chief Gallagher responded, "no you're not, you've got two (2) more weeks, that baby is going to be late."

46. Ultimately, Plaintiff gave birth the following day.

47. When Plaintiff returned to work from maternity leave, Chief Gallagher changed Plaintiff's shift, which previously had been prearranged to accommodate child care.

48. When Plaintiff brought this up to Chief Gallagher, he stated he did not care and she would have to figure it out.

49. In fact, Chief Gallagher resisted giving Plaintiff any time off or flexibility for child care.

50. Chief Gallagher also reprimanded the other female Police Officer in Defendant's Department, Jessica Hannah ("Officer Hannah"), for taking what he perceived to be "too much maternity leave."

51. However, Chief Gallagher did not take any issue with male employees who required time off.

52. Moreover, Chief Gallagher made inappropriate sex-based comments to Plaintiff on numerous occasions.

53. For example, on about March 1, 2022, while speaking with Plaintiff, Chief Gallagher made fun of a former employee who transitioned from female to male.

54. Then, on or about March 25, 2022, Mr. Gallagher again brought up this same former employee, and asked Plaintiff, "does someone like her find someone like you attractive?"

55. During this same conversation, Mr. Gallagher then mentioned another employee who he considered to be a "very attractive young woman" and said, "people like you and her don't show up in this profession very often."

56. Additionally, on or about March 3, 2022, Chief Gallagher stood behind Plaintiff, and drew the attention to her buttocks, purporting she had sat in something.

57. Chief Gallagher's friend from the Upper Southampton Township Police Department, Lieutenant Craig Rudisill ("Lt. Rudisill"), who was present, told Plaintiff to turn around, and both he and Chief Gallagher stared at Plaintiff's buttocks.

58. Furthermore, Lt. Moffet also discriminated against Plaintiff because of her sex, pregnancy, and maternal status.

59. For example, after the birth of her daughter, Lt. Moffet ignored the fact that Plaintiff was on maternity leave, texting her multiple times about work-related matters, and

insisting on scheduling her for a detective school interview for May 14, 2021, merely four (4) weeks after she gave birth.

60. Further, Lt. Moffet required Plaintiff complete her firearms qualifications on the range while she was out on maternity leave.

61. Also while on maternity leave, Plaintiff requested a new belt and uniform because her body had changed from pregnancy, but Lt. Moffet inexplicably denied her requests despite Defendant routinely providing uniform replacements to other officers.

62. In fact, Defendant never provided Plaintiff these uniform replacements despite her following up with Lt. Moffet. Defendant, however, provided other officers with entirely new uniforms.

63. Additionally, Lt. Moffet inexplicably insisted that Plaintiff's police car did not need a standard emergency siren, despite it being Department policy that all vehicles be outfitted with them and all of Plaintiff's male counterparts' cars having standard emergency sirens.

64. As a result of the aforementioned, Plaintiff complained at least six (6) times to the Township Manager, Dana Cozza ("Ms. Cozza"), who too took minimal and insufficient action to address Plaintiff's complaints.

65. After Plaintiff made complaints to Ms. Cozza, both Chief Gallagher and Lt. Moffet retaliated against Plaintiff for engaging in this protected activity.

66. Notably, on or about May 24, 2022, Chief Gallagher called Plaintiff to his office, and verbally reprimanded her because Ms. Cozza and Defendant's attorney had contacted him about Plaintiff's complaints.

67. After receiving the reprimand, Plaintiff reported this retaliation to Ms. Cozza, who responded only by telling Plaintiff to "hang in there."

68. The above-described discriminatory and retaliatory environment persisted for the duration of Plaintiff's employment.

69. As a result thereof, on or about August 29, 2022, Plaintiff could no longer tolerate working in such a hostile workplace, and she resigned from her position with Defendant.

70. In light of the foregoing, it is believed and therefore averred that Defendant discriminated against Plaintiff, subjected her to a hostile work environment, and constructively discharged her from employment on the basis of her sex and/or gender, pregnancy, maternal status, need to express milk in the workplace, and in retaliation for her good faith reports and/or complaints of workplace discrimination in connection thereto, in violation of Title VII, and the PDA.

71. Additionally, it is believed and averred that Defendant interfered with Plaintiff's FMLA rights/benefits and discriminated against Plaintiff, subjected her to a hostile work environment, and constructively discharged her from employment in retaliation for Plaintiff taking FMLA leave.

72. Additionally, in accordance with the FLSA, Plaintiff was entitled to a place, other than a bathroom, that was shielded from view and free from intrusion by her coworkers, wherein she could express breast milk for one (1) year after her daughter's birth, that of which Defendant failed to provide, violating Plaintiff's rights under the FSLA.

73. The severe and pervasive harassment Plaintiff faced altered the conditions of her employment to the extent that a reasonable employee in Plaintiff's situation would resign.

74. As a direct, actual, and proximate cause of Defendant's unlawful actions, by and through its managers, agents, and servants, Plaintiff has and continues to suffer damages, including but not limited to, lost earnings, lost future earnings, emotional distress, and humiliation.

## COUNT I
## FAIR LABOR STANDARDS ACT
## 29 U.S.C. § 201, *et seq.*, 42 U.S.C § 18001, *et seq.*
## FAILURE TO PROVIDE ACCOMMODATIONS FOR NURSING EMPLOYEES

75. Paragraphs 1 through 74 are hereby incorporated by reference as through the same were fully set forth at length herein.

76. Defendant employed at least fifty (50) employees at its various locations at all times material hereto.

77. Pursuant to Section 207(r) of the FLSA, nursing mothers, for one (1) year following the birth of a child, must be provided a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used to express breast milk.

78. According to the policies and practices of Defendant, Plaintiff was required to express breast milk in public spaces that were open to intrusion and were, in fact, invaded by colleagues on several occasions.

79. Notably, Defendant's requirement that Plaintiff express breast milk in a restroom facially violates Section 207(r) of the FLSA.

80. The foregoing actions of Defendant and the policies and practices of Defendant violate the FLSA.

81. Defendant's actions were willful, not in good faith, and in reckless disregard of clearly applicable FLSA provisions.

82. Defendant is liable to Plaintiff for actual damages, liquidated damages, and other equitable relief, pursuant to 29 U.S.C. 207(r), as well as reasonable attorney's fees, costs, and expenses.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully request that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Adjudicating and declaring that Defendant violated the FLSA by failing to provide Plaintiff with adequate space to express breast milk in the workplace;

b) Awarding Plaintiff back pay wages in an amount consistent with the FLSA;

c) Awarding Plaintiff liquidated damages in accordance with the FLSA;

d) Awarding Plaintiff reasonable attorney's fees and all costs of this action, to be paid by Defendant, in accordance with the FLSA;

e) Awarding pre- and post-judgment interest and court costs as further allowed by law;

f) Such other and further relief as is just and equitable under the circumstances.

## COUNT II
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. § 2000e, *et seq.*
### HOSTILE WORK ENVIRONMENT, DISCRIMINATION, RETALIATION, & CONSTRUCTIVE DISCHARGE ON THE BASIS OF SEX/GENDER

83. Paragraphs 1 through 82 are hereby incorporated by reference as though the same were fully set forth at length herein.

84. Defendant employed at least fifteen (15) employees at its various locations at all times relevant hereto.

85. Plaintiff is a woman and as such is a member of a class protected under Title VII from unlawful discrimination because of sex, including maternal status and pregnancy.

86. Defendant engaged in severe and pervasive discriminatory and retaliatory behavior toward Plaintiff on the basis of her sex.

87. Defendant subjected Plaintiff to and/or otherwise permitted the existence of a hostile work environment because of her sex, despite Plaintiff's complaints to management.

88. The conditions of Plaintiff's employment became so intolerable that the only reasonable response was for Plaintiff to resign.

89. Defendant constructively discharged Plaintiff's employment because of her sex.

90. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

91. Because of Defendant's unlawful acts, Plaintiff suffered damages in the form of loss of past and future wages and compensation, mental and emotional damages, loss of reputation, personal humiliation, and loss of life's enjoyment.

92. As a result of Defendant's deliberate, unlawful, wanton, and malicious actions as set forth above, Plaintiff has suffered loss of employment, promotion, benefits, earnings, and earnings potential.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages and front pay, in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000.00);

b) Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

c) Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

d) Pre-judgment interests in an appropriate amount; and

e) Such other further relief as is just and equitable under the circumstances.

## COUNT III
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## PREGNANCY DISCRIMINATION ACT
## 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 2000e(k), *et seq.*
## HOSTILE WORK ENVIRONMENT, DISCRIMINATION, & RETALIATION ON THE BASIS OF PREGNANCY

98. Paragraphs 1 through 97 are hereby incorporated by reference as though the same were fully set forth at length herein.

99. Defendant employed at least fifteen (15) employees at its various locations at all times relevant hereto.

100. Plaintiff is a member of a class protected under Title VII from unlawful discrimination because of pregnancy and childbirth.

101. Defendant engaged in severe and pervasive discriminatory and retaliatory behavior toward Plaintiff on the basis of her pregnancy and childbirth.

102. Defendant subjected Plaintiff to and/or otherwise permitted the existence of a hostile work environment because of her pregnancy and childbirth.

103. Defendant failed to remedy its unlawful conduct despite Plaintiff's complaints to management.

104. The conditions of Plaintiff's employment became so intolerable that the only reasonable response was for Plaintiff to resign.

105. Defendant constructively discharged Plaintiff because of her pregnancy, childbirth, and maternal status.

106. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

107. Because of Defendant's unlawful acts, Plaintiff suffered damages in the form of loss of past and future wages and compensation, mental and emotional damages, loss of reputation, personal humiliation, and loss of life's enjoyment.

108. As a result of Defendant's deliberate, unlawful, wanton, and malicious actions as set forth above, Plaintiff has suffered loss of employment, promotion, benefits, earnings, and earnings potential.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages and front pay, in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000.00);

b) Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

c) Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

d) Pre-judgment interests in an appropriate amount; and

e) Such other further relief as is just and equitable under the circumstances.

**COUNT IV**
**FAMILY AND MEDICAL LEAVE ACT**
**29 U.S.C. § 2601,** *et seq.*
**INTERFERENCE & RETALIATION**

109. Paragraphs 1 through 108 are hereby incorporated by reference as though the same were fully set forth at length herein.

110. Defendant is a "covered employer" under the FMLA and employed at least fifty (50) employees within a seventy-five (75) mile radius of Plaintiff's worksite for each working day in each of (20) or more calendar weeks in 2022, 2021, and 2020.

111. Plaintiff was an eligible employee under the FMLA and was entitled to twelve (12) weeks of unpaid leave in connection with her pregnancy and childbirth.

112. Defendant willfully interfered with Plaintiff's FMLA rights by requiring her to perform work-related tasks while she was on FMLA leave.

113. Defendant willfully retaliated against Plaintiff for having exercised her FMLA rights by subjecting her to severe and pervasive discriminatory treatment upon her return to work and by constructively discharging her employment.

93. The aforementioned actions of the Defendant constitute interference and retaliation under the FMLA.

94. As a result of Defendant's actions, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages and front pay, in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000.00);

b) Liquidated damages;

c) Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

      d)      Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

      e)      Pre-judgment interests in an appropriate amount; and

      f)      Such other further relief as is just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: *Michael Murphy, Esq.*
Michael Murphy, Esquire
Jake Daniel Novelli, Esquire
1628 John F. Kennedy Blvd., Suite 2000
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
murphy@phillyemploymentlawyer.com
jnovelli@phillyemploymentlawyer.com
*Counsel for Plaintiff*

Dated: July 18, 2023

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spread sheets, images, cache memory, payroll records, paystubs, time records, time sheets and any other information and/or data which may be relevant to any claim or defense in this litigation.