## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMANTHA DEVERY** | : | |
| | : | |
| **Plaintiff**, | : | |
| | : | |
| **v.** | : | **Civil Action No. 2:23-cv-02742-PD** |
| | : | |
| **BUCKINGHAM TOWNSHIP** | : | |
| | : | |
| **Defendant**. | : | |

## DEFENDANT BUCKINGHAM TOWNSHIP'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT <u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56</u>

Respectfully submitted,

**BELLWOAR KELLY LLP**

<u>s/ *Jonathan R. Long, Esq.*</u>
Andrew J. Bellwoar, Esq.
Jonathan R. Long, Esq.
126 W. Miner Street, #1
West Chester, PA 19382
(610) 314-7066
(610) 344-7585 (fax)
abellwoar@bellwoarkelly.com
jlong@bellwoarkelly.com

*Attorneys for Defendants*

DATED: March 21, 2024

Defendant Buckingham Township ("Defendant" or the "Township"), by and through their undersigned counsel, hereby submit this brief in support of their motion for summary judgment.

## I.    PROCEDURAL AND FACTUAL HISTORY

### A.    Procedural Background.

On or about July 18, 2023, Plaintiff Samantha Devery ("Plaintiff") filed a four (4) count civil complaint (the "Complaint") against the Township, asserting claims, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, as amended by the Patient Protection and Affordable Care Act ("PPACA"), 42 U.S.C. § 18001 (Count I); Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k) (Counts II & III); and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 (Count IV), for the alleged violation of Plaintiff's right to a reasonable space to express breast milk, subjecting Plaintiff to discrimination and a hostile work environment based on her sex and pregnancy, and interfering with Plaintiff's FMLA leave. *See* Complaint at ¶¶ 1-3.

### B.    Factual Background.

See Defendant's attached Statement of Undisputed Material Facts.

## II.    ARGUMENT

### A.    Standard.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "[S]ummary judgment is appropriate only if the record establishes that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Page v. Trs. of the Univ. of Pa.*, 222 F. App'x 144, 145 (3d Cir. 2007), (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); FED. R. CIV. P. 56(c)).

A factual dispute is genuine only if:

> [t]here is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. A disputed fact "is material only if it might affect the outcome of the suit under governing law." Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."

*Meigs v. Care Providers Ins. Servs., LLC*, No. 21-867, 2023 U.S. Dist. LEXIS 7141, at *14 (E.D. Pa. Jan. 13, 2023)(citing *Moody v. Atl. City Bd. of Educ*. 870 F.3d 206, 213 (3d Cir. 2017)).

**B.     COUNT I - Summary Judgment Should be Granted in Favor of Defendant on Count I of Plaintiff's Complaint Because the Undisputed Facts Make it Clear That Defendant Did Not Violate Fair Labor Standards Act, as Amended by the Patient Protection and Affordable Care Act.**

Count I of Plaintiff's Complaint asserts that the Township violated Section 207(r) of the FLSA by allegedly failing to provide the Plaintiff with an adequate location to express breast milk. *See* Complaint at ¶¶ 76 – 81.

3

Section 207(r) of the FLSA requires employers to provide:

> [r]easonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has *need* to express the milk," although the employer is not "required to compensate an employee receiving [such] reasonable break time for any work time spent for such purpose." The law further requires employers to provide "a place other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

*Weaver v. GAT Airline Ground Support, Inc.*, Civil Action No. 23-869, 2024 U.S. Dist. LEXIS 28330, at *10-11 (W.D. Pa. Feb. 20, 2024)(*citing* §§ 207(r)(1)(A) and (2) and § 207(r)(1)(B)).

The Township is entitled to summary judgment on Count I as the women's locker room provided by the Township satisfies the requirements of Section 207(r) of the FLSA. The women's locker room was, at the time Plaintiff became employed at the Township a brand-new facility that had just be rehabilitated. Undisputed Facts No. 22. The women's locker room door locks to provide privacy for Plaintiff. Undisputed Facts No. 23. The women's locker room is not a bathroom. Undisputed Facts No. 24. While it does contain a toilet stall, it also contains a shower stall, multiple sinks, and a locker changing area with a bench, which is located on the other side of the locker room from the bathroom stall. Id. Only two (2) officers utilized the locker room, Plaintiff and Officer Jessica Hannah. Undisputed Facts No. 25. Officer Hannah and Plaintiff, throughout the time both were employed at the

4

Township, worked opposite shifts and were on different squads, thus they were rarely, if ever, at the Township building at the same time.  Undisputed Facts No. 26.

To the best of the Township's information and belief while Plaintiff was using the locker room to pump, the locker room was adequate and met her needs, as Plaintiff did not inform or complain to the Township about the adequacy of the locker room.  Undisputed Facts No. 27.

Furthermore, in January 2022, when the Plaintiff was appointed to the position of Detective, she informed the Township that she was going to start pumping in the Detectives Office.  Undisputed Facts No. 34.  The Township, through Chief Gallagher, was supportive of Plaintiff's decision.  Undisputed Facts No. 35.

The Plaintiff began using the Detectives Office knowing that she would be sharing the space with another Detective.  Undisputed Facts No. 31, 36, & 37.  After Detective James Crusemire became a detective and started sharing the Detectives Office with Plaintiff, she continued to pump in the Detectives Office.  Undisputed Facts No. 39.  Plaintiff never asked Detective Crusemire to leave the office when she began to pump.  Undisputed Facts No. 40.  After an incident involving Lieutenant William Moffitt accidentally walking into the Detectives Office while Plaintiff was pumping, Plaintiff went to Chief Gallagher and he came up with a system in which Plaintiff would put a sign stating "Interview in Progress" on the door of the Detectives Office to indicate that she was pumping and to warn others

not to come into the Detectives Office until the sign came down. Undisputed Facts No. 42.

During the time that Plaintiff was pumping in the women's locker room as well as the Detectives Office, there were other rooms available in the Township building that Plaintiff could have utilized. Undisputed Facts No. 43. However, Plaintiff never requested to use a different location from the Township. Undisputed Facts No. 44.

Thus it is clear that the Township's facilities and conduct meet the requirements of Section 207(r) of the FLSA and judgment should be entered in favor of the Township as to Count I of the Plaintiff's Complaint.

**C.     COUNTS II & III - Summary Judgment Should be Granted in Favor of Defendant on Counts II and III of Plaintiff's Complaint Because the Undisputed Facts Make it Clear That Defendant Did Not Violate Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.**

Counts II and III of Plaintiff's Complaint both make claims under Title VII and assert that the Township engaged in "severe and pervasive discriminatory and retaliatory behavior" towards the Plaintiff and created a hostile work environment and ultimately caused the Plaintiff to be constructively discharged, all of which is based on Plaintiff's gender and pregnancy. *See* Complaint at ¶¶ 84 – 92 and 99 – 106.

Gender discrimination claims "are governed by the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*." *McCowan v. City of Phila.*, No. 19-3326-KSM, 2022 U.S. Dist. LEXIS 43344, at *51-52 (E.D. Pa. Mar. 10, 2022). The *McDonnel Douglas* analysis proceeds in three steps:

> First, the plaintiff must establish a prima facie case of discrimination. To establish a prima facie case of disparate treatment, a plaintiff must show that she is a member of a protected class, that she was qualified for her position, and that she suffered an adverse employment action under circumstances giving rise to an inference of intentional discrimination. *Jones*, 198 F.3d at 410-11; *see also Wallace v. Federated Dep't Stores, Inc.*, 214 F. App'x 142, 144-45 (3d Cir. 2007) (framing the fourth element as requiring evidence that "either similarly-situated non-members of the protected class were treated more favorably, or the adverse job action occurred under circumstances that give rise to an inference of discrimination").
>
> If the plaintiff carries her burden, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action. Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*McCowan v. City of Phila.*, No. 19-3326-KSM, 2022 U.S. Dist. LEXIS 43344, at *51-52 (E.D. Pa. Mar. 10, 2022)(Internal citations omitted)(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)).

The Township acknowledges that the Plaintiff meets the first two prongs of the *McDonnell Douglas* analysis, as she is a member of a protected class due to her

7

gender and pregnancy during the course of her employment at the Township. The Township also acknowledges that the Plaintiff was qualified for her position.

The Township avers that Plaintiff cannot meet the remaining prongs of the *McDonnell Douglas* analysis. The Plaintiff did not suffer an adverse employment action under circumstances giving rise to an inference of intentional discrimination, nor can Plaintiff show either similarly-situated non-members of the protected class were treated more favorably.

Plaintiff has not suffered any adverse employment action. In fact, the opposite is true, during the course of the circumstances and allegations of Plaintiff's Complaint, in late 2021-early 2022, the Plaintiff was essentially promoted to the position of Detective. Undisputed Facts No. 10. While not technically a promotion, the position of Detective comes with an increase in salary, which for the Plaintiff amounted to an additional $15,000.00 per year. Undisputed Facts No. 9 and 11. In addition to the increase in salary, the position of Detective carries an increase in prestige and importance within the Department. Undisputed Facts No. 12.

Additionally, many of Plaintiff's complaints regarding her alleged discrimination at the Department revolve around her work schedule and how it affected her childcare or her husband's work schedule, who is also a police officer at a different department. Undisputed Facts No. 47 – 50. Plaintiff has complained

8

that Chief Gallagher and Lieutenant Moffitt would give her a hard time or deny requests for time off or to switch her schedule. Undisputed Facts No. 51. However, Plaintiff was not the only officer experiencing issues with the Department administration regarding their work schedule or feeling like they were being targeted by the Chief or Lieutenant. After the Plaintiff left the Township's employment, the Township conducted an investigation. Undisputed Facts No. 57. A number of male police officers gave statements as part of that investigation regarding their issues and complaints regarding work schedules and being denied time off. Undisputed Facts No. 58 – 60. Officers Weber, Sherman, Dompert, Ofner, Moller, Davis, Snyder, and Corporal. Myslinski all recounted issues related to being allowed to take time off or the administration pressuring officers to not take time off. Undisputed Facts No. 60. The officers and Corporal also gave statements on how strict Chief Gallagher could be and how he would come down on officers over small policy infractions, such as not wearing their Department-issued hats while on duty. Undisputed Facts No. 61.

Thus, it is clear that the Plaintiff cannot satisfy the third and fourth prong of the *McDonnell Douglas* analysis.

**i.    Hostile Work Environment:**

Plaintiff also makes claims that the situation at the Township amounted to a "hostile work environment." In order to establish a hostile work environment "a

9

plaintiff must show that the harassment 'was sufficiently severe or pervasive to alter the terms and conditions of [the plaintiff's] employment and create an abusive working environment.'" *Page v. Trs. Of the Univ. of Pa.,* 222 Fed. Appx. 144, 146, 2007 U.S. App. LEXIS 6738 (3d Cir.2007)(citing *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)). Additionally:

> Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the **frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;** and whether it unreasonably interferes with an employee's work performance. Hence, **[a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes** in the terms and conditions of employment.

*Id.* (citing *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 270-71, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001). The "[C]onduct must be both objectively and subjectively offensive to violate Title VII." *Id.*

The discriminatory "conduct must be extreme [enough] to amount to a change in the terms and conditions of employment." "In making this assessment, offhand comments and isolated incidents are not enough to sustain a hostile work environment claim." *King v. Pa. Dep't of Corr.,* Civil Action No. 18-1245, 2020 U.S. Dist. LEXIS 79757, at *10-11 (W.D. Pa. May 5, 2020)(citing *Faragher v.*

*City of Boca Raton*, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 141 L. Ed. 2d 662

(1998)).

As previously stated in the prior section, the Plaintiff cannot show that she

was treated differently in many respects than her male colleagues.  Nor has she

proven that the conduct of the Township, Chief Gallagher or Lieutenant Moffitt

was "extreme enough" to change the terms and conditions of her employment.

The Plaintiff works at a police department, there are certain standards and work

schedules that need to be worked and sometimes that is inconvenient, but that does

not amount to a hostile work environment.  The incident with Officer Forbes in

which he stated that the Plaintiff was "acting like a bitch" is the most acute

incident complained of by Plaintiff, however it is a singular incident which was

dealt with by Chief Gallagher in which he reiterated the Township's support for

Plaintiff pumping at work.  Undisputed Facts No. 63 – 67.  The other incidents that

the Plaintiff has brought up are, at best, scattered and isolated incidents that are not

enough to sustain a hostile work claim.

###    ii.    Retaliation:

Plaintiff also makes claims that individuals at the Township retaliated

against her for making Complaints.  A retaliation claim under Title VII must

allege:

> (1) that [the plaintiff] engaged in a protected activity, which can
> include informal protests of discriminatory employment practices

11

such as making complaints to management; (2) adverse action by the
employer either after or contemporaneous with the employee's
protected activity; and (3) a causal connection between the protected
activity and the adverse action.

*Dajti v. Penn Cmty. Bank*, No. 20-1483, 2021 U.S. Dist. LEXIS 62422, at \*15-16
(E.D. Pa. Mar. 31, 2021). Protected activity by the Plaintiff includes "oral and
written complaints and protests, whether formal or informal, to discriminatory
practices prohibited by the statute." *Id*. However, "stray remarks by non-
decisionmakers or by decisionmakers unrelated to the decision process are rarely
given great weight, particularly if they were made temporally remote from the date
of the decision." *Id*. at \*20 (citing *Brewer v. Quaker State Oil Refining Corp.*, 72
F.3d 326, 333 (3d Cir. 1995) and *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983
F.2d 509, 545 (3d Cir. 1992)).

The Plaintiff "must show a causal connection between [her] opposition to, or
participation in proceedings against, unlawful discrimination and an action that
might have dissuaded a reasonable worker from making or supporting a charge of
discrimination." *King v. Pa. Dep't of Corr.*, Civil Action No. 18-1245, 2020 U.S.
Dist. LEXIS 79757, at \*24 (W.D. Pa. May 5, 2020).

The Township posits that the Plaintiff cannot show any sort of retaliation
against her. Plaintiff's main argument for retaliation is that Chief Gallagher and
Lieutenant Moffitt called her into Chief Gallagher's office to talk to her after she

went to Township Manager Cozza over the Detectives' on-call situation.
Undisputed Facts No. 54 & 55.  However, the Plaintiff admitted that her complaint
to the Union and the Township Manager had to do with her concerns that it was
not in the Union contract and she would not be compensated for coming to work
outside of normal working hours.  Undisputed Facts No. 53.  In order to show a
retaliation claim under Title VII, a Plaintiff must show that the retaliation was due
to the Plaintiff speaking out or making a complaint regarding unlawful
discrimination.  Here, the Plaintiff, by her own admission, spoke out over a Union
contract concern, not over an unlawful discriminatory act.  Lastly, there is no
record that Plaintiff was in any way disciplined or reprimanded during her time at
the Department.  Undisputed Facts No. 2.  Therefore, the Plaintiff cannot prove
that she was retaliated against by the Township under Title VII.

### iii.    Constructive Discharge:

The Plaintiff also alleges that she was constructively discharged from
employment at the Township.  Constructive discharge occurs when "workplace
discrimination against an employee rises to the point that his 'working conditions
become so intolerable that a reasonable person in the employee's position would
have felt compelled to resign.'" *Pennsylvania State Police v. Suders*, 542 U.S. 129,
141, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004).  "Intolerability" is assessed by an

objective standard, "whether a 'reasonable person' in the employee's position...would have had no choice but to resign." *King v. Pa. Dep't of Corr.*, Civil Action No. 18-1245, 2020 U.S. Dist. LEXIS 79757, at *17 (W.D. Pa. May 5, 2020)(citing *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 976 (3d Cir. 1998)).

The test for determining whether an employee has been constructively discharged is conducted by:

> [asking] whether 'the conduct complained of would have the foreseeable result' of leading a reasonable employee facing that level of difficulty in their working conditions to resign.  In making this determination, '[a]n employee is protected from a calculated effort to pressure her into resignation through the imposition of unreasonably harsh conditions, **in excess of those faced by her co-workers. She is not, however, guaranteed a working environment free of stress.**'

*Id.* at *17-18 (citing *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir. 1992) and *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S. Ct. 1461, 89 L. Ed. 2d 718 (1986))(emphasis added).

As previously outlined above, the Plaintiff cannot show that she was the only person experiencing many of the complained off issues regarding schedule changes, time off denial, etc., as many of her male co-workers experienced the same thing.  Undisputed Facts No. 56 – 61.  Furthermore, in viewing the facts and circumstances through the reasonable person standard, Officer Jessica Hannah has

14

stated that she has not received or felt any discrimination based on her gender. Undisputed Facts No. 68.  While Officer Hannah has experienced pressure from the administration regarding how much time she took off for her wife giving birth to their daughter, that issue is similar to those experienced by numerous male officers as well.  Undisputed Facts No. 62.

Lastly, the Township accommodated Plaintiff's needs during her pregnancy, when she asked to move where she was pumping the Township supported her decision, and when Plaintiff went to Chief Gallagher over the incident involving Officer Forbes, the Chief supported her right to pump and take the time she needed.  Undisputed Facts No. 3 – 5, 34 – 35, and 65.

Thus, is it clear that the Plaintiff cannot meet the threshold of discrimination, a hostile work environment, retaliation, or constructive discharge and judgment should be entered in the Township's favor on Counts II and III of Plaintiff's Complaint.

**D.    COUNT IV – Summary Judgment Should be Granted in Favor of Defendant on Count IV of Plaintiff's Complaint Because the Undisputed Facts Make it Clear That Defendant Did Not Violate the Family Medical Leave Act.**

Count IV of Plaintiff's Complaint allege that the Township interfered with her FMLA leave in the form of her maternity leave.  *See* Complaint at ¶¶ 110 – 113.

15

"FMLA interference claims are derived from 29 U.S.C. § 2615(a)(1)," and that "[t]o succeed on an interference claim, a plaintiff must demonstrate that he or she was entitled to and denied some benefit under the FMLA." *Erdman v. Nationwide Ins. Co.*, 510 F. Supp. 2d 363, 370 n.4 (M.D. Pa. 2007), *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009).

In the present matter, Plaintiff alleges that the Township interfered with her FMLA leave by contacting her while she was out on her maternity leave regarding the interview process for the Detective position as well as contacting her regarding the firearms recertification.

The Plaintiff received her full FMLA leave of 12 weeks. Undisputed Facts No. 14 & 69. Lieutenant Moffitt did contact Plaintiff while she was on her FMLA leave regarding the Detective position interview, but it was because she had expressed interest in being considered for the position. Undisputed Facts No. 15 & 17. Lieutenant Moffitt also contacted Plaintiff regarding her taking part in the firearms recertification so that she could return to work at the end of her maternity leave as a full patrol officer. Undisputed Facts No. 18 – 20. See *Karaffa v. Montgomery Twp.*, No. 12-1184, 2013 U.S. Dist. LEXIS 39185, at *11-13 (E.D. Pa. Mar. 21, 2013)(citing 29 U.S.C. § 2614(a)(1); *accord* 29 C.F.R. § 825.214 ("On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced . . . .").

16

Furthermore, Lieutenant Moffitt had a friendly relationship with Plaintiff and he and Plaintiff corresponded via text message repeatedly throughout Plaintiff's maternity leave regarding personal matters, including Lieutenant Moffitt and his wife purchasing gifts for Plaintiff's newborn daughter.  Undisputed Facts No. 15 & 16.

Therefore, the Plaintiff received her full FMLA leave and the Township did not interfere with her leave.  Any contact between the Plaintiff and Township was clearly for Plaintiff's benefit to help her with her career advancement and assist her with returning to the same position she had prior to going out on maternity leave.  Thus, judgment should be entered in favor of the Defendant on Count IV of the Plaintiff's Complaint.

## III.  CONCLUSION

For all or any of the foregoing reasons, Defendant, Buckingham Township, respectfully request that judgment be entered in its favor on Counts I, II, III, and IV of Plaintiff's Complaint.

Respectfully Submitted,

s/ Jonathan R. Long, Esq.
Andrew J. Bellwoar, Esq.
Jonathan R. Long, Esq.
**BELLWOAR KELLY LLP**
126 W. Miner Street, #1
West Chester, PA 19382
(610) 314-7066
(610) 344-7585 (fax)

abellwoar@bellwoarkelly.com
jlong@bellwoarkelly.com

*Attorneys for Defendants*

DATED: March 21, 2024